# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**THOMAS SMITH,**

   **Plaintiff,**

           **CASE NO. 2:06-cv-00708**
           **JUDGE SMITH**
**vs.**             **Magistrate Judge Abel**

**COLUMBIA GAS OF OHIO**
**GROUP MEDICAL BENEFIT**
**PLAN,** *et al.,*

   **Defendants.**

## OPINION AND ORDER

   Plaintiff Thomas Smith ("Smith") filed this action against Defendants Columbia Gas of Ohio ("Columbia Gas" or "the company"), the NiSource Consolidated Flex Medical Plan ("Medical Plan"), the NiSource Dental Plan ("Dental Plan"), the NiSource Vision Plan ("Vision Plan"), the NiSource Life Insurance Plan ("Life Insurance Plan"), and the Retirement Plan of Columbia Energy Group Companies ("Pension Plan") (collectively, "Defendants"), asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). In the Court's June 4, 2009 Opinion and Order and corresponding June 5, 2009 final Judgment Entry, the Court granted in part and denied in part Plaintiff's Motion for Judgment on the Merits and/or Summary Judgment and granted in part and denied in part Defendants' Motion for Summary Judgment. (Doc 59). This matter is before the Court on Plaintiff's Motion for Attorney's Fees and Costs pursuant to 29 U.S.C. § 1132(g)(1) (Doc. 61). For the following reasons, Plaintiff's Motion for Attorney's Fees and Costs is **GRANTED IN PART AND DENIED IN PART.**

# I.  FACTUAL BACKGROUND

Plaintiff Smith graduated from high school in 1970.  He thereafter served in the United States Army.  He saw combat duty in Vietnam where he was shot in both legs, his arm and neck. Plaintiff began his employment with Columbia Gas (now NiSource) as a laborer in June 1977.  By virtue of his employment at Columbia Gas, Plaintiff Smith was a participant in the Group Long-Term Disability Insurance Plan ("LTD Plan"), the Medical Plan, the Dental Plan, the Vision Plan, the Life Insurance Plan (collectively the "Welfare Plans") and the Pension Plan.

Beginning in July 1993, Plaintiff Smith began to experience periodic dizziness, falling down and passing out.  The last day Plaintiff provided service to the company was July 7, 1993. On or about December 22, 1993, Plaintiff Smith filed a claim for disability to the LTD Plan's administrator, Aetna Life Insurance Company ("Aetna").  On January 28, 1994, Aetna granted Plaintiff's claim for long-term disability benefits and began paying a monthly benefit under the LTD Plan effective January 7, 1994.  In addition, the Social Security Administration awarded Plaintiff Smith disability benefits effective January 1994.

Aetna continued to pay Plaintiff Smith's disability benefits for more than seven years. Then, on February 20, 2001, Aetna terminated benefits to the Plaintiff effective February 28, 2001.  Aetna advised Columbia Gas that Plaintiff's "LTD benefits have been terminated as of February 28, 2001, because he no longer meets that policy definition of *disability*."

Plaintiff internally appealed the termination of his disability benefits, and Aetna wrote to Plaintiff on September 11, 2001, advising that it had upheld the decision to terminate. Thereafter, on October 15, 2002, Plaintiff brought an action in this Court pursuant to 29 U.S.C. § 1132, seeking judicial review of Aetna's termination of disability benefits. (*See Smith v. Aetna U.S.*

*Healthcare*, Case No. C2-02-1016 (S.D. Ohio 2004) (Sargus, J.). At that time, Plaintiff Smith continued to be billed for and receive his Medical, Dental, Vision, and Life Insurance benefits, and Plaintiff Smith was not notified that he was no longer earning credited service under the Pension Plan.

On March 24, 2004, this Court rendered its decision on the parties' cross motions for judgment in the action filed against Aetna. *See Smith v. Aetna U.S. Healthcare*, 312 F.Supp. 942 (S.D. Ohio 2004) (Sargus, J.). The Court reversed Aetna's determination and reinstated Plaintiff Smith's benefits under the LTD Plan. *Id*. In reaching this conclusion, Judge Sargus agreed with all of the treating physicians and the Social Security Administration's determination that Plaintiff was disabled, and consequently, the Court ordered Aetna to reinstate disability benefits. *Id*. at 954.

After this Court reinstated Mr. Smith's LTD benefits, on June 2, 2004, Plaintiff Smith entered into a confidential Settlement Agreement and Release of All Claims ("Settlement Agreement") with Aetna and the LTD Plan. In the parties' confidential Settlement Agreement, Plaintiff Smith agreed to accept a lump sum payment to resolve all of his claims. The Settlement Agreement explicitly stated: "This Agreement does not constitute an admission of liability by Defendants, all liability being expressly denied." The Defendants in the instant case were not parties to the litigation or the Settlement Agreement. In addition, the Defendants in the instant case did not obtain a copy of the confidential Settlement Agreement until the discovery phase of this action. At the time Plaintiff Smith entered into the Settlement Agreement, he still continued to pay for and receive his Medical, Dental, Vision, and Life Insurance benefits, and he was never notified that he was no longer earning credited service under the Pension Plan.

3

In 2005, Debbie Rock, the NiSource Employee Services Representative, began a project she labeled the "PeopleSoft Cleanup Project" to discontinue the payment of health and welfare and retirement benefits to people no longer receiving long-term disability benefits. To complete this task, Ms. Rock would utilize quarterly reports from Aetna indicating who was "currently receiving LTD benefits, who had been dropped from benefits, anybody who retired and would no longer be receiving benefits."

During the Cleanup Project, Ms. Rock reviewed Plaintiff Smith's file and made notes. On April 5, 2005, Ms. Rock noted that Mr. Smith had been billed for his continuing medical and dental coverage since January 1, 1998. She further noted that Aetna had terminated his disability benefits February 28, 2001.

On August 4, 2005, Ms. Rock sent an email to Jim Brown, NiSource HR Director, indicating: "Attached is a list of employees who currently have a PeopleSoft status of LTD; however, according to the LTD provider, they no longer have an active LTD claim and they are not receiving LTD benefits." She directed the HR Department to "notify the employee if their Company status changes."

On or about September 1, 2005, Plaintiff Smith received a letter from Columbia Gas of Ohio notifying him that he had been "administratively separated retroactively to February 21, 2001." The letter was sent from Lynne Aronson, a Senior Consultant in HR with Columbia Gas. The letter was similar to a form letter that was sent out to all individuals affected by the PeopleSoft Cleanup Project.

On September 16, 2005, NiSource sent Plaintiff Smith a letter advising him that he had accumulated 24.8333 years of Benefit Service under the Pension Plan, with credited service

ending February 27, 2001. Plaintiff subsequently received communications from NiSource indicating that his Medical, Dental, Vision, Life, Accidental Death and Dismemberment Benefits had terminated effective August 31, 2005. These letters did not indicate the reason for Plaintiff's termination of benefits nor did they reference the plan provisions on which the determination to terminate was based. Further, the communications did not set forth any review procedures or inform Plaintiff Smith of his right to bring a civil action under ERISA.

On October 26, 2005, Plaintiff Smith's counsel wrote to Columbia Gas to request reconsideration of the decision to terminate Plaintiff's pension credited service and welfare benefits. On October 31, 2005, counsel for NiSource replied that the matter was under consideration and would be responded to as soon as practicable. On December 13, 2005, Plaintiff's counsel sent a letter to NiSource counsel requesting an answer to the request for reconsideration. And, again on February 7, 2006, Plaintiff's counsel sent a letter to NiSource counsel requesting that the appeal be heard.

Despite these repeated efforts, Defendants refused to review their decision to terminate Plaintiff's pension credited service and welfare benefits. Consequently, on August 17, 2006, Plaintiff Smith's counsel filed the instant action. Plaintiff alleged that Defendants failed to substantially comply with ERISA regulations mandating that Plaintiff Smith be provided a full and fair review of the adverse benefit determination pursuant to 29 U.S.C. § 1133. In addition, Plaintiff asserted a claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) or alternatively, a claim for estoppel under 29 U.S.C. § 1132(a)(3). Finally, Plaintiff Smith has asserted a breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(3) as an alternative to his wrongful denial of benefits and estoppel claims. On July 1, 2008, Plaintiff Smith filed a

Motion for Judgment on the Merits or, in the alternative, a Motion for Summary Judgment (Doc. 48), and Defendant filed a Motion for Summary Judgment (Doc. 50).

In the Court's June 4, 2009 Opinion and Order, the Court found that Defendants violated 29 U.S.C. § 1133 by failing to substantially comply with its notice requirements and ordered Plaintiff's "welfare benefits and credited service under the pension plan" to be reinstated "retroactive to the date they were terminated." Plaintiff subsequently filed a Motion for Attorney's Fees and Costs (Doc. 64). The motion has been fully briefed and is ripe for review.

## II.    STANDARD OF REVIEW

ERISA authorizes a district court, in its discretion, to "allow a reasonable attorney[ ] fees and costs of action to either party" in an action by a plan participant. 29 U.S.C. § 1132(g)(1). The Court examines the following five factors to determine whether a party should be awarded reasonable attorneys's fees and costs of litigation under § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.,* 461 F.3d 639, 642 (6th Cir. 2006) (per curiam); *accord Sec'y of Dep't of Labor v. King,* 775 F.2d 666, 669 (6th Cir. 1985) (establishing the five-factor test). The Sixth Circuit has emphasized that "[n]o single factor is determinative," and therefore, this Court must "consider each factor before exercising its discretion" when determining whether to award attorney fees. *Moon,* 461 F.3d at 642-43 (citing *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998). Finally, the Sixth Circuit has instructed that there is no presumption that attorney fees

should ordinarily be awarded to the prevailing plaintiff. *First Trust Corp. v. Bryant,* 410 F.3d 842, 851 (6th Cir. 2005).

## III.    DISCUSSION

### A.    The Five-Factor Test Articulated in *King*

The parties agree that the Court, in determining whether to award attorney's fees and costs of litigation, should utilize the five-factor test articulated in *King*. Plaintiff argues, and the Court agrees, that the majority of the factors weigh in Plaintiff's favor, and therefore, the Court should grant Plaintiff's petition for attorney's fees.

#### 1.    The Degree of the Opposing Party's Culpability or Bad Faith

Plaintiff argues that Defendants acted with culpability by failing to meet the notice requirements of § 1133 and by repeatedly refusing to consider Plaintiff's requests for reconsideration. (Pl.'s Reply at 4). Plaintiff contends that Defendants' repeated refusals "demonstrated a calculated refusal to follow the law despite repeated entreaties by the Plaintiff's counsel to do so." (*Id.*). Defendants respond that its violations of § 1133 were not made in bad faith, but instead occurred due to its incorrect conclusion that § 1133 did not apply to Plaintiff's termination of benefits. (Defs.' Memo. in Opp. at 7). The Court disagrees with Defendants and instead finds that this factor weighs in favor of Plaintiff.

The Court recognizes that when examining the first factor—the degree of the opposing party's culpability or bad faith—"the necessary degree of culpability is not established by the fact that [the] defendant was eventually found liable." *Marchant v. Faurecia Exhaust Systems, Inc.*, 411 F.Supp.2d 834, 836 (S.D. Ohio 2005) (Spiegel, J.) (citing *Gard v. Blankenburg*, 33 Fed.Appx. 722, 733 (6th Cir. 2002). Thus, it is not the Court's finding of liability that prompts

the Court to find that this factor weighs in favor of Plaintiff. Further, the Court agrees with Defendants, that it did not act in bad faith when it initially, but erroneously concluded that § 1133 did not apply to Plaintiff's termination of benefits. Plaintiff was terminated along with over sixty other individuals as a result of the "PeopleSoft Cleanup Project," and the letter he received was similar to a form letter that was sent out to all individuals affected by the PeopleSoft Cleanup Project.

The evidence put forth by Defendants demonstrates that the purpose of this project was to discontinue the payment of health and welfare and retirement benefits to people who should not have been receiving the benefits, but were receiving them due to a records error. Defendants indicate that it was their intention for any terminations to result from "[t]he ministerial function of adjusting records." For example, individuals who had quit or who's employment had been terminated, but who were still receiving benefits would have had their records corrected and benefits terminated. As set forth in this Court's June 4, 2009 Opinion and Order, there were instances, however, in which the clean-up project identified individuals whose termination of benefits was not ministerial, and was ultimately determined improper when reconsidered by Defendants. (*See* June 4, 2009 Opinion and Order at 5-6 discussion regarding plan participants Rose, Belair, Parisi, Timm and Osburn). As with plan participants Rose, Belair, Parisi, Timm and Osburn, Plaintiff's termination was not ministerial, and therefore, Defendants should have complied with § 1133's notification requirements. (*See Id.* at III.A.1). Based upon the foregoing circumstances, the Court finds that Defendants' failure to do so initially, however, was not in bad faith.

The Court agrees with Plaintiff, however, that Defendants acted with culpability by

8

repeatedly refusing to consider Plaintiff's requests for reconsideration. *Three* times Plaintiff's counsel wrote to Defendants to request reconsideration of the decision to terminate Plaintiff's pension credited serve and welfare benefits. Upon review and receipt of these appeals, Defendants knew or should have known that Plaintiff's termination—like that of plan participants Rose, Belair, Parisi, Timm and Osburn—was not ministerial. Yet, Defendants did not provide Plaintiff with a termination letter complying with § 1133's notification requirements, and further, they continually refused to review their decision to terminate Plaintiff's pension credited service and welfare benefits. As Plaintiff points out, the instant case may not have been necessary had the Plan Administrator simply reviewed the decision to terminate Plaintiff's benefits.

"Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits, we have found that attorney fees are appropriate." *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377-78 (6th Cir. 2009). In the instant case, despite multiple requests for reconsideration, Plaintiff was unable to obtain *any* review, let along "adequate" review of his termination of benefits. Despite Judge Sargus' holding in *Smith v. Aetna U.S. Healthcare*, which clearly found Plaintiff to be disabled and ordered reinstatement of Plaintiff's LTD benefits, Defendants fail to offer even a shred of evidence establishing that it even considered whether Plaintiff continued to remain disabled and whether his benefits should continue if so. Instead, Defendants acted with culpability by relying on a theory that lacked legitimate foundation to repeatedly refuse to consider Plaintiff's requests for reconsideration and by repeatedly failing to comply with § 1133's notification requirements.

Consequently, the Court concludes that the first factor weighs in Plaintiff's favor.

**2.      Opposing Party's Ability to Satisfy an Award of Attorney's Fees**

Defendant Columbia Gas of Ohio/NiSource is a large utility corporation, and the Plan Defendants are large benefit plans covering a large amount of employees in several states. There are six Defendants, and the costs each will incur in satisfying any awarded attorney's fees will be spread among them. Accordingly, Defendants have conceded their ability to pay an award of attorney's fees. (Defs.' Memo. in Opp. at 6 n.1). Thus, the ability to satisfy an award of attorney's fees weighs in favor of awarding fees in this case.

### 3. Deterrent Effect of an Award on Other Persons Under Similar Circumstances

Plaintiff contends that an award of attorney's fees in the instant case will deter other plan administrators from failing to provide meaningful review of claims determinations and from failing to provide sufficient notice to plan participants. (Pl.'s Mot. at 6). Defendants counter that the deterrent effect is minimal because there is little evidence of culpability or bad faith and also because the circumstances in this case are unique. (Defs.' Memo. in Opp. at 8).

As noted by Defendants, the Sixth Circuit has suggested that "when there is little evidence of culpability or bad faith, there is no reason to seek deterrence beyond that which comes with holding defendants liable." *Marchant*, 411 F.Supp.2d at 837 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991)); *see* also, *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936 (6th Cir. 1996) (noting that the "deterrent . . . effect is likely to have more significance in a case where the defendant is highly culpable . . . ."). For the reasons set forth above, the Court disagrees, however, that Defendants' behavior was not culpable. Further, the Court disagrees with Defendants' assertion of uniqueness. The evidence presented demonstrates that Defendants' clean-up project called for benefit terminations for over sixty different participants. And, of those, at least five other individuals were similarly situated to Plaintiff in that

they were identified for termination by the clean-up project, but whose termination of benefits was not ministerial. Thus, a similar situation occurred in this case and is likely to occur in the future should Defendants chose to perform another "clean-up." Moreover, it is likely other plans, too, may perform "clean-ups." Awarding attorney's fees in the instant case will deter other plans from disingenuously claiming that non-ministerial benefits terminations are not adverse benefit determinations which are subject to claims procedures.

Thus, the third factor weighs in favor of awarding fees in the instant case.

### 4. Whether Plaintiff Sought to Confer a Common Benefit on All Participants and Beneficiaries of an ERISA Plan or Resolve Significant Legal Questions Regarding ERISA

Plaintiff concedes that his primary objective in bringing this suit was to obtain benefits for himself, but asserts that his secondary objective "was to prevent Defendants from depriving notice and an opportunity for review to other participants." (Pl.'s Mot. at 8). Specifically, Plaintiff highlights that discovery revealed that Defendants used their clean-up project summary terminations on over sixty different participants, and opines that this litigation will confer a benefit on all participants whose claims have been denied. (*Id.*). As noted by Defendants, Plaintiff's arguments with respect to this factor miss the mark.

The Sixth Circuit has repeatedly held that the issue to consider under the first alternative question is whether the plaintiff *sought* to confer a benefit on other plan participants, not merely whether the outcome of the plaintiff's case indeed conferred a benefit on other plan participants. *See e.g.*, *Gaeth v. Hartford Life Ins. Co.,* 538 F.3d 524, 533 (6th Cir. 2008) (finding for the defendant with respect to the common benefit factor because even though the plaintiff "arguably obtained a 'common benefit' for all plan participants in the form of deterring the plan

11

administrator from making similarly unreasonable decisions in the future," the plaintiff "'only sought benefits for herself and did not seek to confer a benefit on all plan participants'") (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006)).

Plaintiff also did not seek to resolve any significant legal question regarding ERISA. Instead, Plaintiff primarily sought a reversal of a benefits denial under § 1132(a)(1)(B) and a finding that Defendants failed to comply with the requirements of § 1133.

Accordingly, this factor weighs against awarding fees in this case.

### 5. Relative Merits of the Parties' Positions

Plaintiff contends, and the Court agrees, that the relative merits of the parties' positions favors an award of attorney's fees to Plaintiff. Defendants argue that this factor weighs in their favor because they were meritorious on three of five of Plaintiff's claims, and as such, Plaintiff cannot be found to be the prevailing party. (Defs.' Memo. in Opp. at 10). Defendant further argues that its argument that it substantially complied with the requirements of § 1133 cannot be viewed as wholly without merit. (*Id*. at 11-12).

The Court rejects Defendants' contention simple arithmetic should be employed to determine that Plaintiff was not the prevailing party. The three claims on which Plaintiff was not granted judgment did not fail for lack of merit, but instead were rendered moot since they were pled in the alternative to the claim on which Plaintiff was granted judgment. This Court, in the June 4, 2009 Opinion and Order, found that Defendants violated § 1133 by failing to substantially comply with its notice requirements and ordered Plaintiff's welfare benefits and credited service under the pension plan to be reinstated retroactive to the date they were terminated. Consequently, Plaintiff was awarded the relief he requested in his complaint and is therefore the

prevailing party in this case.

The Court, however, in reaching the conclusion that this fifth factors weighs in Plaintiff's favor, does not merely consider who is the prevailing party. Instead, the Court must determine whether Defendant's position was "more devoid of merit than that of any other losing litigant." *Foltice*, 98 F.3d at 937 (quoting *Armistead*, 944 F.2d at 1304). In the instant case, not only were Defendants' claims unsuccessful, but they lacked merit. Indeed, this Court, in the June 4, 2009 Opinion and Order, stated that Defendants' argument that "the letters 'afforded Plaintiff the right to a fair opportunity for review' is wholly disingenuous." (June 4, 2009 Opinion and Order at 36-37). In addition, Defendants continued to argue that terminating Plaintiff's benefits was simply a ministerial function even though the evidence and the existing authority was to the contrary.

Thus, the Court concludes that the fifth and final factor weighs in favor of awarding fees.

In summary, the Court finds that Defendants acted culpably and are able to satisfy the award of attorney's fees. In addition, though the Court does not find that Plaintiff sought to confer a common benefit or resolve a significant legal question regarding ERISA, the Court does find that awarding attorney's fees will have a deterrent effect on other plan administrators in similar situations. Finally, the Court finds that the merits of Plaintiff's position in this case outweighed that of Defendants'. Thus, after careful consideration of the factors articulated in *King*, the Court concludes that the balance weighs in favor of awarding attorney's fees and costs to Plaintiff.

**B.      Reasonableness of the Requested Attorney's Fees**

Plaintiff seeks and award of attorney's fees and costs to Plaintiff in the amount of $41,265.09.

Defendants argue that even if the Court were to award some amount of attorney's fees to Plaintiff, the amount sought by Plaintiff is unreasonable and should be reduced by the Court. (Defs.' Memo. in Opp. at 12). Defendants supply the following three reasons in support of its argument: (1) Plaintiff was only successful on one of his five claims; (2) Plaintiff's billed travel time is unreasonable; and (3) Plaintiff's billed secretarial time is unreasonable. (*Id*. at 12-14).

The Court previously addressed and rejected Defendants' first argument. (*See supra* at Section. III.B.).

Defendants' second argument is well-taken. Plaintiff requests that Defendants pay his attorney's normal rate of $175 for his attorney's travel time between Toledo, Ohio and Columbus, Ohio. Though travel time is ordinarily billable and therefore appropriately included in an award of attorney's fees, such is not the case where the travel time being requested is not reasonable. *See e.g.*, *Crumbaker v. Merit Systems Protection Board*, 781 F.2d 191 (Fed. Cir. 1986) ("[I]f the travel is unnecessary, the time spent in travel should be subtracted out.") (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In the instant case, Plaintiff resides near Columbus, and the Court in which Plaintiff filed his Complaint sits in Columbus. Plaintiff's attorney's office was in Columbus when he accepted and filed the case, but he has since moved to Toledo. In this circumstance, the Court finds that it would be unreasonable for Plaintiff to be expected to pay his attorney for travel time between Toledo and Columbus. Therefore, the Court finds that Defendants similarly should not be required to pay for that time, and the requested amount should

be reduced accordingly. Plaintiff notes that most of the requested fees for travel time were incurred when Plaintiff's attorney traveled to Indiana to take depositions. The Court agrees with Plaintiff that such travel would have been incurred regardless of the location of Plaintiff's counsel, and accordingly, finds that this travel time is recoverable.

Finally, Defendants' third argument is well-taken. Plaintiff has requested that Defendants pay $50.00 per hour for time spent by his attorney's secretary. The Court agrees with Defendants that it is beyond the norm for a party to be awarded secretarial fees, which are ordinarily included in an attorney's hourly fee. In this case, the secretarial fees add up to $402.50, and the requested amount should be reduced accordingly.

In summary, the total amount of attorney's fees and costs sought by Plaintiff—$41,256.09—should be reduced by the travel time billed to Plaintiff for his attorney's for travel time between Toledo and Columbus and also by the $402.50 secretarial fees. The remainder of the fees and costs request is reasonable and is therefore awarded.

# V.  CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff Smith's Motion for Attorney's Fees and Costs (Doc. 61).  After weighing the *King* factors, the Court finds they favor Plaintiff.  In addition, the Court finds that Plaintiff is the prevailing party and is entitled to costs.  Plaintiff, however, is not entitled to all of the attorney's fees and costs he requests as specified herein.  Plaintiff must exclude: (1) travel time billed to Plaintiff for his attorney's for travel time between Toledo and Columbus; and (2) the $402.50 secretarial fees.  The remainder of the fees and costs request is reasonable and is therefore awarded.  Plaintiff may re-file his affidavit and billing statement on or before **February 10, 2010.**  Payment should be rendered within sixty days thereafter.

The Clerk shall remove Document 61 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

  **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**